UNITED STATES COURT
DISTRICT OF MINNESOTA

In re:   Bankr. 21-30803

DynoTec, Industries, Inc.,

      Debtor.   Chapter 11 Subchapter V

## MEMORANDUM DECISION AND ORDER

This matter came before the Court upon the Fifth Application for Compensation (the "Application") filed by the Subchapter V trustee (the "Trustee") in the above captioned case. [ECF 187.] A secured creditor filed an objection (the "Objection"). [ECF 189.] The Debtor filed a response of no objection. [ECF 190.] This court held a hearing on February 21, 2024 (the "Hearing"). Appearances were noted on the record. For reasons set forth hereinafter, the Application is denied, and the Trustee's appointment is terminated.

### JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334. This memorandum decision is based on all the information available to the Court and constitutes the court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052, made applicable to this contested matter by Fed. R. Bankr. P. 9014(c).

## BACKGROUND

The Debtor filed its second modified plan on November 17, 2021 (as amended, the "Plan"). [ECF 83.] The Hon. Kathleen Sanberg entered an order confirming the Plan under 11 U.S.C. § 1911(b) on December 12, 2021, which was subsequently amended on October 19, 2022 (as amended, the "Confirmation Order"). [ECF 87, 133.]

The most pertinent aspects of the Confirmation Order are as follows. The Debtor is responsible for all plan payments to creditors. As permitted by 11 U.S.C. § 1194(b), the Trustee has no duties with respect to plan payments, and no duty to monitor or supervise Debtor's future cash flow. [ECF 133 at ¶8.] The Trustee's deadline to file and serve its final application for compensation was 30 days after entry of the Confirmation Order. [ECF 133 at ¶2.]

The Trustee filed what appeared to be its fourth and final fee application on December 2, 2022.[1] [ECF 165] It was approved without objection. [ECF 171.] The Confirmation Order clearly stated the Trustee was only required to perform "statutory duties in accordance with 11 U.S.C. § 1183 until the case is closed or the Trustee's appointment is terminated, whichever date occurs first." Id. However, a year later, the Trustee filed a status report detailing his actions with respect to the liquidation of Debtor's accounts receivables for the benefit of the secured creditor and the Trustee's recommendations for ensuring the Debtor's completion of its

---

[1] The Trustee's fourth fee application was for services performed September 28, 2022 through December 1, 2022. [ECF 165.]

obligations under the Plan. [ECF 183.] The Court convened a status conference on November 29, 2023. The Trustee filed the Application shortly thereafter, seeking additional compensation for a variety of services performed during the post-confirmation period. The Trustee justified his late-filed request for additional compensation, asserting he has a broad statutory duty under 11 U.S.C. § 1183(b)(7) to facilitate completion of the plan, and he seeks to be compensated for such work by effectively "surcharging" the final plan distribution due to the secured creditor. The secured creditor objected, and the Court sustained the Objection.

## DISCUSSION

### I. THE CODE DOES NOT MANDATE COMPENSATION FOR SERVICES THAT EXCEED THE PROPER SCOPE OF A SUBCHAPTER V TRUSTEE'S DUTIES.

Compensation for case-by-case trustees in Subchapter V is governed by 11 U.S.C. § 330. Section 330(a)(1)(A) permits the Court to award "reasonable compensation" to a trustee for "actual, necessary services rendered." Fed. R. Bankr. P. 2016(a) and Local Rule 2016-1 (c) requires a trustee to submit an application for approval of its compensation, including itemized time entries describing the services performed, the amount of time involved, the results achieved, and the amount of fees requested. This detail permits the court to employ the lodestar method to evaluate the reasonableness of the requested compensation. P.A. Novelly v. Palans (In re Apex Oil Co.), 960 F.2d 728, 731 (8th Cir. 1992); Chamberlain v. Kula, 213 B.R. 729, 736 (B.A.P. 8th Cir. 1997). To determine whether compensation is reasonable, the court may consider factors such as the hours expended, competitive hourly rates, and the necessity and benefit of the work performed. 11 U.S.C. §

3

330(a)(3); Stalnaker v. DLC, Ltd., 376 F.3d 819, 825 (8th Cir. 2004) (affirming a trustee's award of compensation as reasonable where the bankruptcy court determined the trustee had a fiduciary duty to perform the services in question.)

The Trustee bears the burden of proving the reasonableness of the fees asserted in the Application. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); In re Clark, 223 F.3d 859, 863 (8th Cir. 2000). He is an experienced bankruptcy professional and there is no dispute as to the reasonableness of his hourly rate. There is, however, concern about the number of hours he is proposing to charge the estate and the necessity of the services he performed during the post-confirmation period.  When evaluating a Trustee's services to a bankruptcy estate, the determination does not turn on whether a successful outcome was attained in the case. Uncertainty and risk are expected in bankruptcy. But it is appropriate to inquire whether the specific services that an applicant opted to perform were objectively reasonable decisions in the first place. In this case, the Confirmation Order expressly relieved the Trustee of any responsibility for the Debtor's plan payments. [ECF 133.] The Confirmation Order is clear. The Trustee's post-confirmation duties were limited to express statutory duties under § 1183 only.

As a practical matter, after entry of the Confirmation Order, the Trustee's only outstanding duty was to file a final report in accordance with § 1183(b)(1), which incorporates by reference § 704(a)(9).[2]  Theoretically, if the Debtor modified

---

[2] The Trustee's final report was filed on March 21, 2024, and amended on March 25, 2024. [ECF 194, 199]

4

its plan, the Trustee would have a duty under § 1183(b)(3) to appear and be heard at a hearing. But such duty is strictly theoretical in this case; Debtor sold substantially all its assets pursuant to a liquidating plan over one year ago. Like the other duties described in § 1183, it cannot be triggered at this late stage of a Subchapter V case.

At the Hearing, the Trustee argued he has a general duty under the Code to "facilitate completion of a case." This belief may be informed by an overly broad reading of § 183(b)(7), which requires trustees to "facilitate confirmation of a consensual plan." Again, this duty is inapplicable at this juncture in the post-confirmation phase of a non-consensual plan. The Trustee's unilateral decision to enlarge his duties was not objectively reasonable given the plain language of the Confirmation Order. And by extension, a claim to compensation for performing services outside the scope of his duties is not "reasonable" under § 330.

Other aspects of the Application preclude approval of the Trustee's request for compensation. First, the Application seeks compensation for the period of March 15, 2023 through January 24, 2024, but several activities described in the body of the Application pre-date such period. [ECF 187 at ¶13.] For example, the Trustee alleges he performed services relating to "a motion to sell," but the most recent motion to sell was filed on November 14, 2022. [ECF 150.]. The Trustee was already compensated for such activities in a prior application and the Code does not permit duplicative compensation. 11 U.S.C. § 330(a)(4).

Second, the Application requests compensation of $200 per hour for a paralegal who made twelve separate time entries, each of which states: "Draft

5

monthly report and submit for review." [ECF 187-2, Ex. B.] This may be a reference to the monthly reports submitted by the Trustee to the U.S. Trustee in connection with its duties under 28 U.S.C. § 586(a)(3). But, to date, there are no corresponding docket entries for monthly reports filed by the Trustee in this case, nor does the Plan or Confirmation Order require the Trustee to generate monthly reports during the post-confirmation period. Third, the Application includes time entries that are simply excessive in duration. § 330(a)(3)(D). For example, the time entry for January 12, 2024 states: "Try to connect to scheduled meeting and emails to Debtor's counsel regarding failure to connect," for which the Trustee seeks payment in the amount of $330 for one full hour of billable time. [ECF 187-2, Ex. B.] Both such requests for compensation are barred by § 330(a)(4)(A)(ii), which prohibits compensation for services that are unlikely to benefit the estate or unnecessary for administration of the estate.

Finally, the Application is simply time-barred. The Confirmation Order set a deadline for the Trustee's application. [ECF 133.] The Application was filed more than one year after the deadline. Exceptions to the deadline are limited to "fees or expenses specifically contemplated by the plan." Id. The Trustee has no post-confirmation duties here, other than a duty to file a final report, so it is implausible that the plan proponent contemplated the Trustee would submit additional fee applications during the post-confirmation period. On the contrary, the record confirms the Trustee's fees were intended to stop accruing 30 days after confirmation. For all the foregoing reasons, the Application is denied.

6

## II. TERMINATION OF SUBCHAPTER V TRUSTEE'S APPOINTMENT

If the Plan in this case had been confirmed under § 1191(a), the Trustee's appointment would have terminated automatically, by operation of law, upon substantial consummation. 11 U.S.C. § 1183(c)(1). Termination is more fluid when a plan is confirmed under § 1191(b). For nonconsensual plans, the "default" role of the trustee is to administer all plan payments for the life of the plan. 11 U.S.C. § 1194(b). The plan commitment period in a nonconsensual plan can vary from 3 to 5 years, due to the rule of construction set forth in § 1191(c). Alternatively, a debtor can opt out of the default and administer its own plan payments after confirmation. 11 U.S.C. § 1194(b). It is quickly apparent why the Code does not include a parallel provision for cases confirmed under § 1191(b): a trustee could have a duty to handle plan payments for 3 years, 5 years, or not at all, depending on the specific terms of the plan and confirmation order in each nonconsensual case.

This is not a drafting error. Flexibility improves success rates in small business cases. A contentious case may justify the ongoing administrative expense of maintaining the trustee's appointment for the entire plan commitment period. By contrast, some Subchapter V cases are confirmed under § 1191(b) solely due to the "apathetic creditor problem.[3]" Apathetic creditors do not warrant the expense of a trustee for the entire post-confirmation period. Similarly, a cash-strapped debtor

---

[3] Under § 1126(c) and Rule 3018(c), a creditor's failure to cast a written vote constitutes neither acceptance nor rejection of the plan. If a class of creditors fails to submit any affirmative votes in favor of the plan, this "apathetic" class of creditors cannot be deemed to accept, which precludes the debtor from confirming a plan under § 1191(a). This is a common occurrence in Subchapter V cases, requiring debtors to "cramdown," even if there are no votes against the plan and no objections to confirmation.

7

may want to administer its own plan payments because it is an inexpensive option permitted by § 1194(b). To eliminate administrative expense entirely, frugal debtors can request a confirmation order that terminates the Trustee's appointment upon substantial consummation of their nonconsensual plan. And, there is scant risk to doing so. The Code permits trustees to be re-appointed in consensual cases, notwithstanding the automatic termination described in § 1183(c)(1). *A fortiori*, a trustee who is terminated after substantial consummation of a non-consensual plan can also be reappointed, or the U.S. Trustee can serve as trustee, "as necessary," per § 1183(a). Alternatively, the debtor can reduce the scope of the Trustee's post-confirmation duties without actually terminating its appointment, thereby reducing post-confirmation expense. Ultimately, a trustee's role should be "right sized" to suit the needs of each case.

Where, as here, the Confirmation Order all but eliminated the Trustee's role after confirmation, perhaps his appointment should have been terminated upon substantial consummation of the plan. Alas, hindsight is 20/20. At this point, the Trustee has filed a final report and has no further duties in the case. [ECF 199.] ACCORDINGLY, IT IS ORDERED: The Application is DENIED. Upon entry of this order, the Trustee's appointment is terminated and his bond released, subject to reappointment, as needed, in accordance with 11 U.S.C. § 1183(a).

DATED: *April 5, 2024*

*/e/Kesha L. Tanabe*
_____
Kesha L. Tanabe
United States Bankruptcy Judge

8